## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 05-569 |
| MUMIN SLAUGHTER | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

      The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Anthony J. Wzorek, Assistant United States Attorney for the District, respectfully submits this Sentencing Memorandum regarding defendant Mumin Slaughter, who is scheduled to be sentenced on April 27, 2006.  For the reasons provided below, the government recommends a sentence within the guideline range of 30-37 months.

I.     <u>BACKGROUND</u>

      A federal grand jury returned an indictment on September 28, 2005, charging Mumin Slaughter with one count of possession with intent to distribute cocaine base ("crack"), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1), arising out of the discovery of 2.843 grams of crack cocaine and a firearm in Mumin Slaughter's room during execution of a search warrant on March 17, 2005. The defendant pled guilty to Count One of the indictment and the government will move to dismiss Count Two at the time of sentencing.

On March 17, 2005, Philadelphia Police executed a search warrant at 2456 North 19th Street, Philadelphia, PA.  Found on the third floor of the location, in the middle bedroom, was Mumin Slaughter, who was asleep.  Found in Slaughter's room was:

    a.     a Taurus .357 caliber revolver, Model 66, serial #5206930, loaded with six (6) live rounds, found in plain view, under a dresser, approximately an arm's reach from defendant Slaughter;

    b.     six (6) additional rounds of .357 ammunition, found in a shoe;

    c.     a sandwich bag containing 30 small pink "ziplock" packets of crack cocaine, found in plain view, on a shelf in an open entertainment center;

    d.     four (4) letters in the name of defendant Mumin Slaughter, addressed to locations other than 2456 North 19th Street;

    e.     two keys which opened the door to the third floor middle bedroom and the front door of the residence;

    f.     $1,086 in U.S. currency, found under the mattress;

    g.     numerous small plastic bags, suitable for future drug packaging.

The government would have presented testimony that defendant Slaughter was renting that bedroom.  In addition, the government would have presented an expert witness who would have testified that, based upon the totality of the circumstances in this case, his opinion is that the drugs in this case were possessed with the intent to distribute.  Lastly, the government would have presented testimony from the Philadelphia Chemistry Laboratory and from the seizing officers that the substance seized was cocaine base ("crack") and that it weighed 2.843 grams.

II.     SENTENCING CALCULATION.

        A.      Statutory Maximum Sentence.

        The total maximum sentence for a violation of 21 U.S.C. § 841(a)(1) is 20 years

imprisonment, a three year period to a lifetime of supervised release, a $1,000,000 fine, and a

$100 special assessment.

        B.      Sentencing Guidelines Calculation.

        In imposing sentence, the Court must take into account the considerations of

sentencing set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220, 261 (2005).

First, as stated in Section 3553(a), the Court must determine and consider the sentencing range

established in the Sentencing Guidelines.  The Third Circuit has confirmed:  "In consideration of

the § 3553(a) factors, a trial court must calculate the correct guidelines range applicable to a

defendant's particular circumstances."  United States v. Cooper, 437 F.3d 324, 330 (3d Cir.

2006).  This Court must make findings pertinent to the guideline calculation by applying the

preponderance of the evidence standard, in the same fashion as was employed prior to the Booker

decision.  Id.

        In this case, as stated in the presentence report (PSR), the correct guideline

calculation is as follows.  Based upon a total offense level of 19 and a criminal history category

of I, the guideline range for imprisonment is 30 to 37 months.

        The government urges that the Court impose a sentence within the final guideline

range.  In Booker, the Supreme Court held that the United States Sentencing Guidelines, as

written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S.

296 (2004).  The Court determined that a mandatory system in which a sentence is increased

-3-

based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court

severed and excised the statutory provision making the guidelines mandatory, 18 U.S.C.

§ 3553(b)(1), thus declaring the guidelines "effectively advisory."  <u>Booker</u>, 543 U.S. at 245.  This

ruling results in a system in which the sentencing court, while informed by the guidelines, may

impose any sentence within the statutory maximum penalty for the offense of conviction.  The

sentence will be subject to review by the Court of Appeals for "unreasonableness."  <u>Id.</u> at 261.

   While the guidelines are now advisory, absent unusual circumstances, which are

not present here, the sentence in a criminal case should still fall within the guideline range as

determined by the Court.  As the Third Circuit stated, "a within-guidelines range sentence is

more likely to be reasonable than one that lies outside the advisory guidelines range . . . ."

<u>Cooper</u>, 437 F.3d at 331.

   The reason is apparent from a review of the relevant statute and judicial decisions.

Section 3553(a) lists the following considerations of sentencing:

 (1) the nature and circumstances of the offense and the history and characteristics of the
defendant;

 (2) the need for the sentence imposed--

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to
provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;

 (3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

      Of these factors, by far the most important is Section 3553(a)(4) -- the correctly calculated guideline range established by the Sentencing Commission -- after any departures authorized by the guideline policy statements referenced in Section 3553(a)(5).  The importance of this "final" guideline range has nothing to do with its former mandatory status, which was eliminated in Booker.  Rather, the final guideline range is the starting point for determining reasonableness for three reasons: (1) only the guidelines comprehensively examine the full panoply of sentencing considerations; (2) the guidelines represent decades of nationwide experience and study; and (3) they are the only measure for avoiding unwarranted sentencing disparities.  Congress explicitly created the Sentencing Commission and the guideline system to achieve these ends.

      First, the guidelines are much more comprehensive than any other Section 3553(a) factor.  Each of the other 3553(a) factors addresses only a single facet of the many issues posed by sentencing.  "[T]he factors the sentencing commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider

under <u>Booker</u> and § 3553(a)."  <u>United States v. Shelton</u>, 400 F.3d 1325, 1332 n.9 (11th Cir.

2005); Statement of Judge Ricardo H. Hinojosa, Chair of the United States Sentencing

Commission, quoted in <u>United States v. Peach</u>, 356 F. Supp. 2d 1018, 1020-22 (D.N.D. 2005).

In formulating the guidelines, the Commission was required to and has considered all of the

§ 3553(a) factors.  <u>See</u> 28 U.S.C. §§ 991(b)(1), 994(b)(1), (c), (f), (g), (m); U.S.S.G. § 1A1.1

Editorial Note.  As a result, the guidelines contain a multitude of adjustments and departures

reflecting the specific characteristics of the offense(s) and the victim(s), and provide guidance

regarding assessment of the defendant's role, acceptance of responsibility, and personal history.

Thus, "[i]n most cases, . . . the Commission will have adequately taken all

relevant factors into account" in the initial guideline range.  In the remaining cases, where "there

exists an aggravating or mitigating circumstance . . . of a kind, or to a degree, not adequately

taken into consideration by the Sentencing Commission in formulating the guidelines that, in

order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence

different from that described" in the initial guideline range, the Commission has authorized

departures, including departures based on the defendant's history and characteristics.  U.S.S.G.

§ 5K2.0(a)(1)(A); U.S.S.G. Ch. 5, Parts H & K; <u>Koon v. United States</u>, 518 U.S. 81, 94-95

(1996).

Second, the guidelines are the product of years of nationwide experience and

sustained study.  In drafting the original guidelines in 1988, the Sentencing Commission

canvassed both prior and post-guidelines sentencing practice, identifying aggravating and

mitigating factors.  28 U.S.C. § 994(m); U.S. Sentencing Commission, Supplementary Report on

the Initial Sentencing Guidelines and Policy Statements 16-17 (1987).  Since then, the

Commission has continued to study district court and appellate sentencing decisions, and has

fine-tuned the guidelines to take them into account.  U.S.S.G. App. C.   Indeed, the Booker Court

specifically affirmed that the Commission will continue to study appellate and district court

sentencing decisions, and "will continue to modify its Guidelines in light of what it learns,

thereby encouraging what it finds to be better sentencing practices."  543 U.S. at 263 (Breyer, J.).

The Sentencing Commission's incomparable flow of nationwide information, and

its years of concentrated study on this topic, merit strong consideration by judges who are

assigned the task of determining appropriate sentences for criminal conduct.  United States v.

Wilson, 350 F. Supp. 2d 910, 914-25, reaffirmed on denial of reconsideration, 355 F. Supp. 2d

1269, 1271-88 (D. Utah 2005); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D.

Neb. 2005); Peach, 356 F. Supp. 2d at 1020-22.

Third, the correctly calculated guideline range is the only means to evaluate the

statutory sentencing goal on which Booker placed so much emphasis: "the need to avoid

unwarranted sentence disparities," 18 U.S.C. § 3553(a)(6).[1]  Congress, the Court, and the

guidelines all seek to minimize such disparity compared to "all other similar sentences imposed

nationwide."  United States v. White, 406 F.3d 827, 837 (7th Cir. 2005).  The Sentencing

---

[1]  Every opinion in Booker acknowledged the express national policy, as articulated by
Congress, that sentences be uniform across the country to the extent possible.  See, e.g., Booker,
543 U.S. at 253 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing
Act was to move the sentencing system in the direction of increased uniformity."); id. at 744
(same) ("Congress' basic statutory goal of diminishing sentencing disparity depends for its
success upon judicial efforts to determine, and to base punishment upon, the real conduct that
underlies the crime of conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The
elimination of sentencing disparity, which Congress determined was chiefly the result of a
discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 303-04
(dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing
disparity.").

Guidelines provide the comprehensive information and guidance about sentencing around the

nation that is essential to accomplishing Congress' goal of uniform federal sentencing.

> The only way of avoiding gross disparities in sentencing from judge-to-judge and district-to-
> district is for sentencing courts to apply some uniform measure in all cases.  The only standard
> currently available is the Sentencing Guidelines.

Wilson, 350 F. Supp. 2d at 924; Wanning, 354 F. Supp. 2d at 1061-62 ("we have no meaningful

substitute for the neutrality, coherence, and equality" that the guidelines provide).  Thus,

measuring reasonableness in relation to the guideline range serves "to minimize the wide

disparity in sentencing across the country for similarly situated defendants that led to the

enactment of the Guidelines in the first place."  United States v. Paulus, 331 F. Supp. 2d 727,

733 (E.D. Wis. 2005).

Thus, the Third Circuit in Cooper stated that "'[t]he Guidelines remain an

essential tool in creating a fair and uniform sentencing regime across the country,' and provide a

natural starting point for the determination of the appropriate level of punishment for criminal

conduct."  Cooper, 437 F.3d at 331, quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th

Cir. 2005).[2]

---

[2]  In aiming for uniform sentencing, the appropriate focus is on sentences imposed in federal court for like offenses.  A panel of the Third Circuit correctly found "no merit in [the] argument that the District Court should have considered what Cropper's sentence would have been had he been convicted of a similar state-law offense.  Booker directs our reasonableness review to the factors set forth under federal law for federal criminal offenses.  That a separate sovereign chooses to implement its criminal sentencing scheme in a different manner does not impact our analysis under § 3553(a)(6), which focuses on the need to avoid unwarranted disparities among sentences issued by federal courts for violations of federal law."  United States v. Cropper, 2006 WL 372338, at *4 n.7 (3d Cir. Feb. 17, 2006) (not precedential).

In this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing.  Therefore, the government respectfully recommends that the Court sentence the defendant within the guideline range defined above.

III.    GOVERNMENT'S RECOMMENDATION.

As set forth in the PSR, with an offense level of 19 and a criminal history category of I, the defendant falls within the sentencing range of 30 to 37 months.  The government respectfully recommends that the Court impose a period of incarceration within this guideline range.  Such a sentence would recognize the seriousness of defendant's offense conduct.

For all of the above reasons, the government respectfully recommends that the Court impose a period of incarceration within the guideline range established by the PSR.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney


_____
ANTHONY J. WZOREK
Assistant United States Attorney


Date:   April 26, 2006.

<u>CERTIFICATION</u>

       I certify that the government's sentencing memorandum has been electronically filed and is available for viewing and downloading from the ECF system.  In addition, a true and correct copy of the government's sentencing memorandum has been sent by facsimile to:

                      Stuart Patchen, Esq.
                      Defender Association of Philadelphia
                      Federal Court Division
                      The Curtis Center Building
                      601 Walnut Street
                      Suite 540 West
                      Independence Square West
                      Philadelphia, PA 19106

                      _____
                      ANTHONY J. WZOREK
                      Assistant United States Attorney
                      United States Attorney's Office
                      615 Chestnut Street; Suite 1250
                      Philadelphia, PA 19106-4476
                      (215) 861-8469
                      State Bar ID # 32639

DATE: _____